J. S. SHROPSHIRE, PLAINTIFF IN ERROR, V. DUNCAN & WALLACE, DEFENDANTS IN ERROR.

1. Building Contract: SUBCONTRACTORS: RELEASE. The firm of B. & V. entered into a contract with S. to build a house for him in the city of O., for a stipulated price. B. & V. let the contract for gas-fitting and plumbing to D. & W. S. was to make payments to his contractors monthly, upon estimates. While the work was in progress, and B. & V. were indebted to D. & W. for about the sum of $18, they applied to S. for payment in excess of the estimate. This S. agreed to make if they would procure a release from some of the subcontractors. They thereupon procured from D. & W. the following:

"OMAHA, NEB., June 26, 1886.

"We, the undersigned, accept W. F. Baker for contract on plumbing at J. S. Shropshire's house.

"DUNCAN & WALLACE."

Held, That the above release, when read in the light of the surrounding circumstances, applied alone to the monthly estimate then due.

2. ——: ——: EVIDENCE. The weight of testimony tends to show that D. & W. had refused to go on with the contract under B. & V., who had failed, and that S. had thereupon employed them to complete the work under his direction.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*J. S. Shropshire* and *J. W. Lounsbury*, for plaintiff in error.

*Savage, Morris & Davis*, for defendants in error.

MAXWELL, J.

This action was brought in the district court of Douglas county by the defendants in error against the plaintiff in error to foreclose a mechanic's lien. A decree was rendered in the court below for the sum of $132.77, etc. The testimony tends to show that in the spring of 1886 the firm of Baker & Van Horn entered into a contract with Shropshire to erect a dwelling-house for him in the city of Omaha, and to include the necessary gas-fitting and plumbing; that Baker & Van Horn contracted with Duncan & Wallace for the necessary gas-fitting and plumbing for said house; that Shropshire was to make payments monthly to the contractors; that in the latter part of June, 1886, Baker & Van Horn were pressed for money, and they requested Shropshire to pay more than the amount of their estimate for that month. This he refused to do unless they would procure receipts or releases from some of the subcontractors or the material men. Baker & Van Horn thereupon applied to Duncan & Wallace for such release, and obtained the following:

"OMAHA, NEB., June 26, 1886.

"We, the undersigned, accept W. F. Baker for contract on plumbing at J. S. Shropshire's house.

"DUNCAN & WALLACE."

There was due Duncan & Wallace at this time about $18. Mr. Shropshire claims upon the delivery of this receipt that he was induced to pay Baker & Van Horn $150. Baker & Van Horn failed in August, 1886, and did not complete the dwelling aforesaid, and Mr. Shropshire was compelled to finish the same. Mr. Duncan, one of the plaintiffs below, who was a witness in the case, testifies that, "about the 13th of August, 1886, Mr. Shropshire asked me why we didn't go on with that work, and I told him the reason that we didn't was that Baker & Van Horn had failed, and that we had ignored the contract altogether; Mr. Shropshire said that everything was all settled and he wanted it gone on with; and I said all right, your order is good, and he turned around and walked out the door, and that was all that was said."

Q. What was said after that?

A. At one o'clock we sent a man up there to put in the plumbing, and he came back and said there was no one there that could tell him what to do, and Mr. Wallace told him to go up and find Mr. Shropshire and get the plans and specifications to see what he had to do, and Mr. Shropshire said there were no specifications, and he wanted it done as he wanted it; and he went down and done it as Mr. Shropshire told him to do it, and there was no plans or specifications in regard to it. We made out a bill, and then was the first time that I knew there was an order or release, when the bill was presented.

Q. Did you present it?

A. My book-keeper did afterwards.

Q. Do you know what the value of that work was?

A. I do.

Q. What was it?

A. $150.77.

Q. This work was done by your men?

A. Yes, sir.

Q. And is the work set out in the petition?

A.   Yes, sir.

Q.   Does this bill include the $18 that was due from Baker & Van Horn?

A.   It does not, from the fact that Mr. Wallace, after we had made this second contract with Mr. Shropshire, told him about the release, when this question arose, so that we did not charge it at all; we looked to Baker to pay that $18, and he has since paid us $2.

Q.   Do you know about the time that you quit work under the Baker & Van Horn contract?

A.   Mr. Wallace went up there sometime in July, about the 4th of July, to put in some sewer works, and there was nobody there; he was then told that the fellows had fizzled out; that was the remark that was made in regard to them, as Mr. Wallace testified, so that we wouldn't do any more; we were done with it.

This testimony is corroborated by other witnesses, and although denied by Mr. Shropshire, is sustained by the clear weight of evidence. The weight of testimony also tends to show that Duncan & Wallace intended to release the amount then due for labor, and not that which was to result from services thereafter to be performed. But whatever the intention may have been, if Mr. Shropshire afterwards employed Duncan & Wallace to complete the work, he will be liable for the service so rendered. Upon the whole case the judgment of the district court is sustained by the weight of evidence, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.